UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL MELCHOR,

        Movant,

v.

UNITED STATES OF AMERICA,

        Respondent.

_____/

Case No. 1:14-CV-1257
(Criminal Case No. 1:11-CR-258-1)

HON. GORDON J. QUIST

## OPINION

Movant, Michael Melchor, has filed a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, seeking relief from his conviction by plea to receipt and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1), resulting in a sentence of 360 months' imprisonment and lifetime supervised release. Melchor claims that he is entitled to relief because his counsel was ineffective. The Government has filed a response, Melchor has filed a reply, and Melchor's trial counsel has filed an affidavit. After reviewing the motion, briefs, and supporting documents, the Court concludes that Melchor is not entitled to relief.[1]

### I. FACTUAL AND PROCEDURAL HISTORY[2]

In July of 2011, Melchor, a previously-registered sex offender, joined an on-line gaming site called Wizards 101, through which he met J.S., an 11-year-old girl who lived in McMinnville, Oregon. Melchor gave J.S. his telephone number and "friended" her on

_____

[1] Melchor requests that the Court hold an evidentiary hearing on his claims. Because "the record conclusively shows that [Melchor] is entitled to no relief," *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999), the Court concludes that an evidentiary hearing is not required to resolve the matter.

[2] The following facts are derived from Melchor's presentence investigation report and the search warrant affidavit attached to the Government's response to Melchor's motion.

Facebook.com.   Melchor and J.S. chatted on Facebook from approximately July 11, 2011 through August 2, 2011.   After they became Facebook friends, J.S. told Melchor that she was eleven years old and Melchor told J.S. that he was 36 years old.[3]   J.S. told Melchor that she had a cell phone but that she was out of minutes.   J.S. gave Melchor her cell number, and Melchor purchased unlimited text messaging and unlimited calling minutes for her cell phone.     In addition to speaking with J.S. on her phone, Melchor also spoke with J.S.'s 11-year-old cousin, R.H.

In his conversations with J.S., Melchor spoke about his sexual desires for J.S.  Melchor told J.S. that he loved her, described in detail what it would be like to have sex with her, said that he wanted to massage her breasts while he kissed her neck, and talked about him shaving her pubic hair.   Melchor said he wanted to travel to Oregon to take J.S. away and marry her. Melchor also told J.S. that he wanted to make babies with her.  In one exchange, after J.S. told Melchor that she had just turned 12 years old, Melchor responded, "I wouldn't mind if u were 11 still but I love u no matter what age u are."   In another exchange, after J.S. informed Melchor that she had pubic hair, Melchor responded, "oh I guess I will have to shave it off when I get there ok."   Melchor also requested J.S. and R.H. to send him pictures of themselves in bikinis. In one of his posts, Melchor acknowledged that he sent J.S. a birthday card with $25 inside and a post-it note inside the flap of the envelope with his return address on it so that J.S.'s mother would not be suspicious of the card.

J.S.'s parents eventually discovered that J.S. was engaging in electronic chat sessions on Facebook with Melchor and contacted the McMinnville Police Department, who in turn requested the assistance of the Grand Rapids Police Department (GRPD) after learning that Melchor was a registered sex offender residing in Grand Rapids.   The GRPD obtained a search

---

[3]At some point during their Facebook relationship, J.S. turned 12 years old.

warrant based upon an affidavit that detailed Melchor's interactions with J.S., and in which the affiant stated that based upon his training and experience, "individuals who partake in solicitation and enticement of children online also view and collect images, videos and various digital media that contain images of child sexually abusive material." After obtaining the warrant, the police searched Melchor's residence and seized computers and several thumb drives and arrested Melchor. In an interview with the GRPD, Melchor admitted to chatting with J.S. on Facebook about massaging her breasts, shaving her pubic hair, and having babies with her. A forensic examination of the seized electronic devices revealed approximately 3,800 images of child pornography and approximately 33 digital movies portraying minors engaged in sex acts.

In September 2011, a grand jury charged Melchor with two counts of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) and 2256(8)(A). The following day, the grand jury returned a superseding indictment that added notice of Melchor's prior convictions for sex offenses.

On November 17, 2011, Melchor signed a plea agreement and pled guilty to Count 1 of the superseding indictment, charging him with receipt of child pornography. The plea agreement advised Melchor that he was subject to imprisonment of not less than 15 years nor more than 40 years, a term of supervised release ranging from five years to life, a fine of $250,000, and a mandatory special assessment of $100.00. (Plea Agreement at 2, ¶ 3.) The Government agreed to dismiss Count 2, to not oppose Melchor's request for a two-level reduction for acceptance of responsibility under U.S.S.G § 3E1.1(a) and to move for an additional one-level reduction under § 3E1.1(b) if the adjusted offense level was 16 or greater, and

> not to bring additional charges involving the production, distribution, receipt or possession of child pornography or images of children engaged in sexually explicit conduct, in violation of §§ 2251(a), 2252A(a)(2)(A), 2252A(a)(5)(B), 2252(a)(2), 2252(a)(4)(B), nor will the United States Attorney's Office bring charges involving the coercion or enticement of a minor to travel in order to

engage in criminal sexual conduct, in violation of 18 U.S.C. § 2422 or the transportation of a minor in interstate commerce for the purpose of criminal sexual conduct, in violation of 18 U.S.C. § 2423 . . . .

(*Id.* at 2–3, ¶ 4.)  At the plea hearing, Melchor affirmed that he was satisfied with the services of his attorney, that there was nothing further he wanted his attorney to do, and that he did not need more time to speak with his attorney.  (Plea Hr'g Tr. at 5.)

Melchor's total offense level was 35, with a criminal history category of III. (Presentence Investigation Report at 10, 12.)  The final guideline range was 210 months to 262 months, but the presentence investigation report recommended an upward variance to the statutory maximum of 480 months based on conduct not taken into account in the Guidelines calculations, including Melchor's conduct with J.S.  (*Id.* at 19 and attached Sentencing Recommendation.)  This Court sentenced Melchor on March 15, 2012, to 360 months' imprisonment and imposed a lifetime term of supervised release.  In imposing a sentence ninety-eight months above the high end of the Guidelines range, the Court took into account both Melchor's conduct with J.S. and Melchor's apparent risk of recidivism and his admitted lack of rehabilitative potential.  (Sentencing Hr'g Tr. at 7–8, 19–20.)

Melchor appealed his sentence to the Sixth Circuit, which reversed on the ground that the conduct with J.S. could not be a basis for an upward variance because it was already taken into account in the Sentencing Guidelines.  *United States v. Melchor*, 515 F. App'x 444, 448–49 (6th Cir. 2013).  However, the court of appeals held that this Court appropriately considered Melchor's apparent lack of rehabilitative potential in imposing an upward variance, and remanded for this Court to determine how much of the variance resulted from that consideration. *Id.* at 447–48, 449–50.

On remand, this Court imposed the same 360-month sentence and lifetime supervised release based solely upon Melchor's risk of recidivism and lack of potential for rehabilitation,

4

although the Court deemed Melchor's behavior with J.S. as relevant to those factors. (Resentencing Hr'g Tr. at 15–16.)  Melchor appealed his sentence again to the Sixth Circuit, which affirmed on April 2, 2014 in an unpublished order.  Thereafter, Melchor filed a timely § 2255 Motion.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2255(a), a prisoner in the custody of the United States may seek collateral relief from a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  A "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."  *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594 (1982)). However, ineffective assistance of counsel claims are generally not reviewable on direct appeal, but instead must be raised in a motion under § 2255.  *United States v. Quinlan*, 473 F.3d 273, 280 (6th Cir. 2007) (citing *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693 (2003)).

In his § 2255 Motion, Melchor claims that his counsel was ineffective on two grounds. First, Melchor contends that his counsel misadvised him to enter into a plea based on the Government's threat to bring additional charges for coercion and enticement, under 18 U.S.C. § 2422(b), and travel in interstate commerce, under 18 U.S.C. § 2423(b), because there was no factual basis to support the threatened charges.  Melchor further states that in discussing Melchor's plea options, his counsel told him that he would most likely get a life sentence if he rejected the plea and the Government was able to obtain a superseding indictment and a conviction for violating § 2422(b).  Melchor contends that, but for the Government's unfounded

threat and counsel's erroneous advice, he would not have accepted the plea agreement. Second, Melchor argues that his counsel was ineffective for failing to file a motion to suppress the evidence that provided the factual basis for Count 1, to which Melchor pled guilty.[4]

Ineffective assistance of counsel claims are analyzed under the well-known two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under the first prong, the defendant must show that counsel's performance was "deficient." That is, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S. Ct. at 2064. The second prong requires the defendant to show that counsel's deficient performance prejudiced his defense—"that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In considering counsel's performance, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065 (internal quotation marks omitted). A court must endeavor to avoid "the distorting effects of hindsight." *Id.* To demonstrate prejudice in the context of a guilty plea, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). If a defendant's ineffective

---

[4]In his reply, Melchor also argues that his counsel was ineffective for failing to move to suppress statements that Melchor made while he was detained an interview/interrogation room at the GRPD. Because Melchor did not raise this argument in his opening brief, the Court will not consider it. *See Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *5 (E.D. Mich. Aug. 8, 2008) (declining to address issues raised for the first time in the defendant's reply brief on the ground that the defendant waived such issues by failing to raise them in its opening brief). Issues raised for the first time in a reply brief are deemed waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Allowing a party to raise an issue for the first time in a reply to a response unfairly denies the opposing party an opportunity to address the newly-raised issue. *Id.*

assistance claim fails on one prong, the court need not consider the second prong. *United States v. Busch*, 411 F. App'x 872, 875–76 (6th Cir. 2011).

### Motion to Suppress

The Court first addresses Melchor's argument that his counsel was ineffective for failing to file a motion to suppress the evidence supporting Count 1 for receipt of child pornography. Melchor argues that his counsel's performance was deficient because the warrant the GRPD obtained was based solely on non-criminal conduct with J.S. in Oregon, which did not give the police probable cause to search Melchor's computer and other electronic devices. Melchor contends that his counsel misunderstood the law because his counsel erroneously believed that Melchor's online exchanges with J.S. were criminal in nature and that, had his counsel realized that such exchanges were not criminal, he would have filed a motion to suppress.

Melchor's counsel, David Kaczor, a very experienced criminal defense lawyer employed by the Federal Public Defender's Office, states in his affidavit that after reviewing the seven-page search warrant affidavit, neither he nor the legal research and writing attorney assigned to Melchor's case found any legal basis to challenge the affidavit through a motion to suppress. (Kaczor Aff. ¶7i.)  Mr. Kaczor further states that he decided not to file a motion to suppress based on knowing and thorough legal understanding of Melchor's Fourth Amendment rights. (*Id.* ¶7q.)

"Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'"  *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).  To establish probable cause, an affidavit in support of "a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched." *United States v. Blakeney*, 942 F.2d 1001, 1025 (6th Cir. 1991).  However, there must be a

"substantial basis" for concluding that evidence of a crime will be found at the location to be searched.  *See id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed.

*Gates*, 462 U.S. at 238, 103 S. Ct. at 2332.

The affidavit submitted in support of the warrant application set forth substantial facts describing Melchor's exchanges of a sexual nature with J.S. and that Melchor was a previously-convicted sex offender.  In addition, the affiant confirmed that based upon his training and experience, adult individuals such as Melchor who engage juveniles on the internet often view and collect images of child pornography.  Given these facts, the issuing judge had a "substantial basis" to conclude that Melchor's residence contained evidence of the crime of accosting, enticing or soliciting a child under Michigan law.  M.C.L. § 750.145a; *see also People v. Kowalski*, 489 Mich. 488, 803 N.W.2d 200 (2011) (discussing the elements of § 750.145a).  In other words, a motion to suppress would have been futile.  Melchor's "[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).  Moreover, Melchor cites no case suggesting that, in the circumstances of this case,  competent counsel should have filed a motion to suppress.  *Gardner v. United States*, 680 F.3d 1006 (7th Cir. 2012), upon which Melchor relies, is inapposite.  In *Gardner*, the Seventh Circuit concluded that the defendant's counsel was ineffective for failing to move to suppress a gun that the defendant claimed the police planted on him.  The defendant's counsel declined to move for suppression based on the erroneous belief that the defendant had to admit actual possession of the gun in order to challenge its seizure.  *Id.*

at 1010. The court observed that the defendant could have challenged the search as violative of the Fourth Amendment because the defendant had a reasonable expectation of privacy in his own person and clothing, and a finding of lack of reasonable suspicion would have resulted in suppression of the gun supporting the gun charge. *Id.* at 1010–11. In contrast to *Gardner*, Melchor has not shown that attorney Kaczor misapprehended the law in failing to move to suppress the evidence obtained in the search of Melchor's computer and electronic devices. Thus, Melchor fails to show that his counsel's performance was deficient.

### *Plea Agreement*

Melchor's argument that his counsel was ineffective in misadvising Melchor about the plea agreement fails on both grounds of the *Strickland* analysis. Melchor essentially argues that the Government's promise not to prosecute him for coercion and enticement under 18 U.S.C. § 2422(b) or travel in interstate commerce under 18 U.S.C. § 2423(b) was illusory because the Government lacked a factual basis to charge him under those statutes. Melchor asserts that, had his counsel properly advised him that the Government could not prosecute him for those offenses, he would not have pled guilty.

Melchor fails to show that his counsel was ineffective in advising him to accept the plea, regardless of whether he could have been prosecuted under §§ 2422(b) or 2423(b). Initially, the Court rejects Melchor's assertion that the Government lacked a factual basis to charge him for coercion/enticement under § 2422(b). That section prohibits the use of "any facility or means of interstate commerce" to "knowingly persuade[], induce[], entice[], or coerce[]" a minor "to engage in . . . any sexual activity for which any person can be charged with a criminal offense," or "attempts to do so." Section 2242(b) "was designed to protect children from the act of solicitation itself." *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011). Because the statute criminalizes "persuasion and the attempt to persuade . . . [rather than] the performance of

the sexual acts themselves . . . a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade." *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000).  Citing *Bailey*, Melchor argues that he could not have been prosecuted under § 2422(b) because the Government did not have evidence that Melchor had taken a "substantial step" toward committing the act of persuasion or the attempt to persuade.  However, the facts of *Bailey*, which are similar to those involving Melchor's contacts with J.S., show otherwise.  In *Bailey*, the defendant contacted several minors on the internet, urged them to meet him, and used graphic language to describe how he wanted to perform oral sex on them.  All of the minors told the defendant that they were minors and one of them emailed the defendant a picture of herself.  The defendant gave that minor his pager number and urged her to call him to arrange a meeting.  *Id.* at 639–40.  In the instant case, Melchor told J.S. that he was in love with her, described what it would be like to have sex with her, and talked about massaging her breasts and shaving her pubic hair.  Melchor also purchased cell phone minutes for J.S. to call Melchor, persuaded her to send him a picture of herself, and sent her a birthday card with $25 and his return address inside.  Melchor's actions and conduct evince an intent to "groom" J.S. for sexual exploitation—a means often associated with sexual enticement or coercion of minors, the "ultimate goal of [which] is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity."  *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012) (internal quotation marks omitted).  Melchor's conduct fell within the scope of § 2422(b).

Even if the Government could not have charged Melchor for violating § 2422(b), Melchor fails to demonstrate that attorney Kaczor's performance in advising Melchor to take the plea was deficient.  The agreement removed the possibility of the government filing these additional charges.  The plea agreement conferred substantial benefits on Melchor that he would

not or may not have otherwise obtained, including the Government's promise not to prosecute Melchor under a number of child pornography and child exploitation statutes, dismissal of the remaining count, and a Sentencing Guideline reduction for acceptance of responsibility. In light of these substantial benefits, and given that the evidence against Melchor as to both counts was overwhelming, Melchor fails to meet his "heavy burden of proof" of showing that attorney Kaczor was ineffective. *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Melchor also fails to establish the prejudice prong of his ineffective assistance claim—a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. In light of the benefits that Melchor obtained pursuant to the plea agreement, his "self-serving statement that he would not have pleaded guilty does not satisfy the 'reasonable probability' test." *Handy v. United States*, No. 96-2594, 1998 WL 152928, at *3 (6th Cir. Mar. 24, 1998); *see also Maiyo v. United States*, 576 F. App'x 567, 571 (6th Cir. 2014) (concluding that the petitioner failed to establish prejudice because the evidence was "irrefutable" and conviction was certain).

Having concluded that Melchor is not entitled to relief, the Court must consider whether a certificate of appealability should issue under 28 U.S.C. § 2253(c)(2). A certificate should issue if Melchor has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has considered Melchor's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The Court finds that reasonable jurists could not find that this Court's dismissal of Melchor's claims was debatable or wrong. Therefore, the Court will deny Melchor a certificate of appealability.

### III. Conclusion

For these reasons, Melchor's § 2255 Motion (dkt. # 1) will be dismissed.  In addition, the Court will deny Melchor a certificate of appealability because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate order will issue.

Dated:  January 21, 2016                              _____/s/ Gordon J. Quist_____
                                                                          GORDON J. QUIST
                                                                  UNITED STATES DISTRICT JUDGE